**25-1727**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

LAUREL HILL MANAGEMENT SERVICES, INC.; MINIMALLY INVASIVE SURGICAL ASSOCIATES; AND ADVANCED WEIGHT LOSS SURGICAL ASSOCIATES,

*Plaintiffs - Appellants,*

V.

LA-Z-BOY INCORPORATED.; AND BLUE CROSS BLUE SHIELD OF MICHIGAN

*Defendants – Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
CASE NO: 2:24-cv-13230-DML-KGA
THE HONORABLE DAVID M. LAWSON, DISTRICT JUDGE

**APPELLANTS' OPENING BRIEF**

**LAW OFFICE OF JONATHAN A. STIEGLITZ**
JONATHAN A. STIEGLITZ
11845 W. OLYMPIC BLVD., SUITE 800
LOS ANGELES, CA 90064
(323) 979-2063
jonathan@stieglitzlaw.com

COUNSEL FOR PLAINTIFFS-APPELLANTS
LAUREL HILL MANAGEMENT SERVICES, INC.; MINIMALLY INVASIVE SURGICAL ASSOCIATES; AND ADVANCED WEIGHT LOSS SURGICAL ASSOCIATES

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Laurel Hill Management Services, Inc. certifies that it has no parent corporation and no publicly held corporation owns an interest in Laurel Hill Management Services, Inc.

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Minimally Invasive Surgical Associates certifies that it has no parent corporation and no publicly held corporation owns an interest in Minimally Invasive Surgical Associates.

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Advanced Weight Loss Surgical Associates certifies that it has no parent corporation and no publicly held corporation owns an interest in Advanced Weight Loss Surgical Associates.

Dated: December 23, 2025

Law Office of Jonathan A. Stieglitz

By: /s/ Jonathan A. Stieglitz

Jonathan A. Stieglitz
Attorneys for Plaintiffs-Appellants Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; And Advanced Weight Loss Surgical Associates

# TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT .................................... 2

TABLE OF CONTENTS .................................... 3

TABLE OF AUTHORITIES .................................... 5

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................... 9

INTRODUCTION .................................... 10

STATEMENT OF JURISDICTION .................................... 16

STATEMENT OF ISSUES .................................... 17

STATEMENT OF THE CASE .................................... 17

I. Relevant Factual Background .................................... 18

II. Procedural History .................................... 23

SUMMARY OF THE ARGUMENT .................................... 25

STANDARD OF REVIEW .................................... 27

ARGUMENT .................................... 29

I. Supreme Court Jurisprudence Since *Travelers* Mandates Changed Evaluation Of ERISA Preemption Of Pre-*Travelers* Cases (Including *Cromwell*) .................................... 29

II. Medical Providers' Claims Are Not Subject To Conflict/Express Preemption Because Of *Cromwell* .................................... 33

A. Sixth Circuit Caselaw Supports That Medical Providers' Claims Are Not Conflict/Express Preempted By ERISA ... 35

B. State Court Caselaw Within The Sixth Circuit Supports That Medical Providers' Claims Are Not Preempted By ERISA .................................... 40

C. Sister Circuit Cases Support That Medical Providers' Claims Are Not Preempted By ERISA ........ 42

D. *Cromwell* Does Not Demand Preemption In This Factual Scenario ........ 47

III. Medical Providers Should Have Been Granted Leave To Amend ........ 50

CONCLUSION ........ 52

CERTIFICATION OF COMPLIANCE ........ 53

ADDENDUM ........ 54

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Aldridge v. Regions Bank*
144 F.4th 828 (6th Cir. 2025)....................12, 36

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
662 F.3d 376 (5th Cir. 2011)....................36, 43, 44

*Admin. Sys. Research Corp. Int'l v. DaVita Healthcare Partners, Inc.*
2017 Mich. App. LEXIS 1817 (Ct. App. Nov. 16, 2017)....................12, 41, 45

*Bafford v. Northrop Grumman Corp.*,
994 F.3d 1020 (9th Cir. 2021).................... 36

*BPS Clinical Lab. v. Blue Cross & Blue Shield*
206 Mich. App. 570 (1994).................... 40

*BPS Clinical Labs. v. Blue Cross & Blue Shield*
217 Mich. App. 687 (1996)....................13, 40, 45

*Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*,
187 F.3d 1045 (9th Cir. 1999)....................41, 45, 47, 49, 50

*Brown v. Bluecross Blueshield of Tenn., Inc.*
827 F.3d 543 (6th Cir. 2016).................... 49

*Cohen v. ConAgra Brands, Inc.*,
16 F.4th 1283 (9th Cir. 2021).................... 28

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*
591 F.3d 1337 (11th Cir. 2009).................... 50

*Cromwell v. Equicor-Equitable HCA Corp.*
944 F.2d 1272 (6th Cir. 1991....................*passim*

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997)....................30, 32

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018) ....................27, 28

*Evans v. Pearson Enters.*
434 F.3d 839 (6th Cir. 2006) .................... 28

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*
498 U.S. 426 (1991) .................... 16

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*,
538 F.3d 594 (7th Cir. 2008) .................... 13

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) ....................30, 31, 32, 33, 47

*Home Health v. Prudential Ins. Co. of Am.*,
101 F.3d 600 (8th Cir. 1996) ....................44, 47

*Hospice of Metro Denver, Inc. v. Grp. Health Ins., Inc.*,
944 F.2d 752 (10th Cir. 1991) ....................44, 45, 47, 50

*Immediate Pharm. Servs. v. Superior Metal Prods.*
134 Ohio App. 3d 748 (1999)....................13, 14, 15, 42, 48

*Lifeline, Ltd. No. II v. Connecticut General Life Insurance Co.*
821 F. Supp. 1201 (E.D. Mich. 1993) ..........14, 15, 26, 34, 39, 51

*Lifeline, Ltd. No. II v. Conn. Gen. Life Ins. Co.*
827 F. Supp. 438 (E.D. Mich. 1993) ....................15, 34, 39, 49, 51

*Lordmann Enters. v. Equicor, Inc.*,
32 F.3d 1529 (11th Cir. 1994) ....................27, 40, 41, 45, 47

*Mackey v. Lanier Collection Agency & Service, Inc.*,
486 U.S. 825 (1988) ....................26, 46

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
857 F.3d 141 (2d Cir. 2017)....................47, 50

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*,
904 F.2d 236 (5th Cir. 1990) .................... 36

*Mich. Affiliated Healthcare Sys. v. CC Sys. Corp.*
139 F.3d 546 (6th Cir. 1998) .................................. 14, 15, 47, 48

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) ........................................................ *passim*

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*
399 F.3d 692 (6th Cir. 2005) .................................. 12, 16, 30, 37

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020)......................... 13, 26, 42, 43, 47, 50

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
592 U.S. 80 (2020) ........................................................ 11, 31, 32

*Self-Insurance Inst. of Am., Inc. v. Snyder*
761 F.3d 631 (6th Cir. 2014) ........................................ 35, 37, 39

*Shaw v. Delta Air Lines*,
463 U.S. 85 (1983) ......................................................... 29

*Smith v. Provident Bank*,
170 F.3d 609 (6th Cir. 1999), ........................................ 35, 36, 39

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*
552 F.3d 430 (6th Cir. 2008) ........................................ 27

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
931 F.3d 966 (9th Cir. 2019) ........................................ 28

*Vannette v. Travelers Ins. Co.*
1994 U.S. Dist. LEXIS 11086 (W.D. Mich. June 29, 1994) ..... 14

*Ward v. Alt. Health Delivery Sys.*
261 F.3d 624 (6th Cir. 2001) ........................................ 12

*Warner v. Ford Motor Co.*
46 F.3d 531 (6th Cir. 1995) .......................................... 17

**Statutes**

28 U.S.C. § 1291 .............................................................. 16

28 U.S.C. § 1332 .............................................................. 16

29 U.S.C. § 1144 ..........................................................17, 29

29 U.S.C. § 1132 ..........................................................17, 35

**Rules**

Rule 12(b)(6) ...............................................................27, 28

Fed. R. App. Proc. 32(a)(7) ................................................ 53

Fed. R. App. Proc. 26.1 ...................................................... 2

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This case deals with the issue of confirming the availability of recourse to third-party medical providers bringing claims in their own rights (i.e. not based on or derivative of an assignment from medical providers' patients and which could not be brought by the patients) against an ERISA entity (insurer or administrator) for payment of medical services as not preempted by ERISA.

## INTRODUCTION[1]

The district court's decision to dismiss Medical Providers'[2] claims as preempted by ERISA[3] is inconsistent with binding Supreme Court precedent, as it was based entirely on *Cromwell v. Equicor-Equitable HCA Corp.* ("*Cromwell*"), 944 F.2d 1272 (6th Cir. 1991), a case which predates the Supreme Court's seminal preemption decision in *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* ("*Travelers*"), 514 U.S. 645, 655 (1995), and which itself does not support the district court's interpretation. Order on Motion to Dismiss, RE 26, Page ID # 153 ("This case, therefore, is governed by *Cromwell*").

First, *Cromwell* has repeatedly been called into question by this Court and other courts, stemming from the instability of the decision

---

[1] All internal alterations, quotation marks, footnotes, and citations herein are omitted, and all emphases are added unless noted.

[2] "Appellants" or "Medical Providers" references are to Appellants Laurel Hill Management Services, Inc. (the assignee of Bay City Surgery and Town Center Surgery), Minimally Invasive Surgical Associates, and Advanced Weight Loss Surgical Associates. "Appellees" references are to Appellees La-Z-Boy Incorporated ("LZB" or "Defendant") and Blue Cross Blue Shield of Michigan ("BCBS").

[3] All statutory references are to the Employee Retirement Income Securities Act of 1974 ("ERISA"), unless noted.

itself. The split opinion[4] in *Cromwell* relied on then-existing Supreme Court authority to interpret the words "relate to," as found in the ERISA statutory language discussing preemption, as demanding broad application of ERISA preemption. *See Cromwell*, 944 F.2d at 1276 ("The Court consistently emphasizes the broad scope of preemption under ERISA."). This understanding, however, was misguided. As the Supreme Court found just a few years later:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere…." But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.

*Travelers*, 514 U.S. at 655; *see also Rutledge v. Pharm. Care Mgmt. Ass'n,* 592 U.S. 80, 88 (2020). Following the Supreme Court's clarification, circuit courts began uniformly interpreting and applying preemption more judiciously, limiting preemption to claims directly impacting the ERISA regulatory scheme and those between traditional

[4] Three judges presided over the case. Each wrote a separate opinion, one of which was a dissent.

ERISA entities.

Fourteen years after *Cromwell*, the Sixth Circuit expressly acknowledged the shift in Supreme Court jurisprudence:

> More recently, however, the **Supreme Court has narrowed the preemptive scope of ERISA**, moving away from the broadest meaning of the provision.

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.* ("*PONI*"), 399 F.3d 692, 697 (6th Cir. 2005); *see also Aldridge v. Regions Bank*, 144 F.4th 828, 838 (6th Cir. 2025) (relying on *Travelers* for same).

As a result of the Supreme Court's clarification, numerous courts within the Sixth Circuit, state courts residing within the Sixth Circuit, and Sister Circuits have explicitly noted *Cromwell*'s non-applicability, distinguishing it and noting its unfortunate legacy of confusion. *See e.g. Ward v. Alt. Health Delivery Sys*., 261 F.3d 624, 627 (6th Cir. 2001) ("*Cromwell* is a confusing case, and two judges on the Cromwell panel specifically stated that the district court should have examined the basis of its jurisdiction before considering preemption issues."); *Admin. Sys. Research Corp. Int'l v. DaVita Healthcare Partners, Inc.* ("*Administration Systems*"), 2017 Mich. App. LEXIS 1817, at *14-15 (Ct. App. Nov. 16, 2017) (distinguishing *Cromwell*, finding that "disputes

involving the rate of payment under an agreement separate from the ERISA plan involve a duty independent of ERISA"); *BPS Clinical Labs. v. Blue Cross & Blue Shield* ("*BPS*"), 217 Mich. App. 687, 691 (1996) (finding no preemption on remand "for reconsideration in light of [] *Travelers*"); *Immediate Pharm. Servs. v. Superior Metal Prods.*, 134 Ohio App. 3d 748, 751 (1999) (finding no preemption and distinguishing *Cromwell's* holding as being limited to where a "plaintiff health care provider's right to recovery was premised solely on an assignment"); *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 236 (3d Cir. 2020) ("*Cromwell* [], which has been aptly criticized as a poorly reasoned outlier in the face of the strong trend in the bulk of the cases considering healthcare-provider claims"); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 601 (7th Cir. 2008) ("*Cromwell* is a poorly reasoned outlier").

Second, even were *Cromwell* not called into question, its holding does not mandate the district court's erroneous preemption finding here. In *Cromwell*, the Court found preemption over a derivative claim (i.e. a claim assigned from the patient's rights under an ERISA plan).

The Court found that its holding was limited to situations in which there was an "absence of any legal duty between appellee, the Beckman plan and appellants[.]" *Cromwell*, 944 F.2d at 1276 n.3; *see also, e.g.*, *Mich. Affiliated Healthcare Sys. v. CC Sys. Corp.*, 139 F.3d 546, 550 (6th Cir. 1998) (finding *Cromwell* limited to derivative claims based on an assignment); *Immediate Pharm.*, 134 Ohio App. 3d at 751 (noting *Cromwell* was limited to where a "plaintiff health care provider's right to recovery was premised solely on an assignment").

The Honorable Judge Feikens—the author of the *Cromwell* majority opinion—himself found that the *Cromwell* holding did not extend to non-derivative claims by providers like those at issue in this case. *See Lifeline, Ltd. No. II v. Connecticut General Life Insurance Co.* ("*Lifeline*") 821 F. Supp. 1201, 1211 (E.D. Mich. 1993); *see also Vannette v. Travelers Ins. Co.*, File No. 1:93-CV-927, 1994 U.S. Dist. LEXIS 11086, at *8 n.1 (W.D. Mich. June 29, 1994) (discussing *Lifeline*, noting Judge Feikens "declined to follow the [*Cromwell* majority] opinion [that he himself authored], choosing instead to follow the concurrence [as aligned with the dissent] and dissent"). In *Lifeline*, Judge Feikens found there could be ***no*** preemption where the "plaintiff does not qualify

as a participant or beneficiary" as "ERISA is not involved" in such an action. *Lifeline*, 821 F. Supp. 1201, 1211 (E.D. Mich. 1993) (finding no preemption over tortious interference claim); *see also Lifeline, Ltd. No. II v. Conn. Gen. Life Ins. Co.*, 827 F. Supp. 438, 446 (E.D. Mich. 1993) ("*Lifeline 2*") (subsequent order finding no preemption over "plaintiff's claims of promissory estoppel and fraudulent misrepresentation").

Judge Feikens wrote:

> **I believe that the dissent is correct** in its determination that Supreme Court and Sixth Circuit precedent clearly require that a district court make an independent inquiry at the outset to determine whether the plaintiff is a "participant" or "beneficiary" within the meaning of ERISA, before it turns to the issue of preemption.

*Lifeline*, 821 F. Supp. at 1211; *see also e.g. Mich. Affiliated Healthcare*, 139 F.3d at 550 (finding *Cromwell* inapplicable as the provider was seeking payment in *Cromwell* based on an assignment from the patient); *Immediate Pharm.*, 134 Ohio App. 3d at 751 (same).

As such, *Cromwell*, even if its holding is followed despite the shift in Supreme Court precedent since its issuance, does not support preemption under the present factual circumstances. Medical Providers are not parties to the ERISA relationship, nor do they plead derivative

claims (i.e. through an assignment). Medical Providers, in their Proposed Second Amended Complaint ("PSAC"), plead a separate agreement from an ERISA plan, which is not preempted. *See, e.g.*, *PONI*, 399 F.3d at 702-03.

Medical Providers respectfully request that this Court reverse and remand for further proceedings in this case.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Medical Providers' state law claims under 28 U.S.C. §1332. Diversity jurisdiction existed at the time the action was filed. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 426 (1991) ("for purposes of determining whether a Federal District Court has diversity jurisdiction over an action, diversity of citizenship is assessed at the time that the action is filed").

This Court has jurisdiction under 28 U.S.C. § 1291 because the appeal is from a final judgment disposing of all claims. Judgment, RE 27, Page ID # 158.

Judgment was entered on August 4, 2025, and Appellants timely appealed on August 13, 2025. *Id.*; Notice of Appeal, RE 28, Page ID # 159.

## STATEMENT OF ISSUES

Are Medical Providers' state law claims, which are independent of any rights of their patient ("Patient") and are specifically pleaded to not be based on Patient's health plan[5] or any of Patient's rights (i.e. claims which could not be asserted by Patient in any way, and are based solely on Medical Providers' ***direct*** contractual rights with Appellees or ***direct*** misrepresentation statements by BCBS on behalf of LZB to Medical Providers) preempted by ERISA[6] § 514(a), 29 U.S.C § 1144(a)?

## STATEMENT OF THE CASE

### I. Relevant Factual Background[7]

"On February 21, 2022, and March 26, 2022, Patient received

[5] Patient's health plan, Patient's plan or the health plan all refer to agreement between Patient and Appellees which dictates the ERISA benefits that Appellees owe to Patient (and not to Medical Providers).

[6] There are two separate, distinct forms of ERISA preemption: (1) complete preemption under ERISA § 502(a), 29 U.S.C § 1132(a) ("Complete Preemption"), and (2) conflict (or express) preemption under ERISA § 514(a), 29 U.S.C § 1144(a) ("Conflict/Express Preemption). Complete Preemption is a question of a federal court's jurisdiction, *see Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995), and is not at issue in this case. Conflict/Express Preemption is a true defense of preemption, *see id.*, and is the basis of the district court's erroneous judgment. Order on Motion to Dismiss, RE 26, Page ID # 158.

[7] Medical Providers argue that the district court should have granted them leave to amend, and that Medical Providers' PSAC would

medical services from Medical Providers." PSAC, RE 30-1, Page ID # 179 ¶25.

"On January 6, 2022, so as to determine whether or not to provide services, and to obtain an agreement from Defendant[8] regarding payment for providing Patient with services, Medical Providers' representatives, Emely and Glaiza, spoke with [Defendant]'s representatives, Tammy and Katherine. The reference numbers for the calls were I21860342 and I22062440." PSAC, RE 30-1, Page ID # 179 ¶26.

"Medical Providers asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?" PSAC, RE 30-1, Page ID # 179 ¶27.

"BCBS on behalf of Defendant represented to Medical Providers that Patient's deductible is and was $1,100.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $4,400.00 and that to date for that calendar year Patient had paid $0.00." PSAC, RE 30-1, Page ID # 179

plead claims that are not preempted by Section 514, Medical Providers' factual citations throughout this brief are to their PSAC.

[8] Defendant refers to Appellee La-Z-Boy (or LZB). PSAC, RE 30-1, Page ID # 179 ¶6.

¶28.

"Medical Providers asked: does Defendant pay based on UCR for procedure codes 43775, 43239, 43281, and 43774, and other similar codes within the same family?" PSAC, RE 30-1, Page ID # 179 ¶29.

"BCBS on behalf of Defendant represented to Medical Providers that for services in connection with procedure codes 43775, 43239, 43281, and 43774, Defendant pays the UCR rate." PSAC, RE 30-1, Page ID # 179 ¶30.

"Medical Providers asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 43775, 43239, 43281, and 43774?" PSAC, RE 30-1, Page ID # 179 ¶31.

"BCBS on behalf of Defendant represented to Medical Providers that for services in connection with procedure codes 43775, 43239, 43281, and 43774, Defendant's payment is not and would not be based on the Medicare Fee Schedule." PSAC, RE 30-1, Page ID # 179 ¶32.

"BCBS on behalf of Defendant informed Medical Providers that the services were covered and would be paid." PSAC, RE 30-1, Page ID # 179 ¶34.

"In the insurance [industry], this information together constitutes

an agreement to pay for medical services. It includes all of the material terms. It discusses price. It discusses the specific services to be provided. And, it includes assent, as BCBS informed Medical Providers that the services would be covered and paid." PSAC, RE 30-1, Page ID # 179 ¶35.

"The agreement was a promise for a service. BCBS on behalf of Defendant promised to pay should Medical Providers provide the services." PSAC, RE 30-1, Page ID # 179 ¶36.

"No exclusions or limitations were made beyond the terms set forth above." PSAC, RE 30-1, Page ID # 179 ¶37.

A payment based on UCR means that "[Defendant] and/or BCBS will utilize a medical bill database from Fair Health Inc." PSAC, RE 30-1, Page ID # 179 ¶21.

The representations made during the phone call are sufficient for Medical Providers to determine how much they would be paid for the medical services. PSAC, RE 30-1, Page ID # 179 *generally*. Reference to the health plan is not necessary, and is not made in the PSAC.

"As Medical Providers had been paid by BCBS at the UCR rate on numerous occasions, Medical Providers relied and provided services

solely based on BCBS's representations, promises and statements on behalf of [Defendant] that payment is and would be at the UCR rate [i.e. based on Fair Health]. Statements which had no relation to [Defendant] and Patient's plan document, as the statements may or may not have been based in [] [Defendant] or Patient's plan documents, but that bore no consideration when Medical Providers agreed to provide medical services. Medical Providers took BCBS's representations on behalf of [Defendant] at face value and provided services based solely on those promises and representations." PSAC, RE 30-1, Page ID # 179 ¶44.

"Furthermore, [Medical Providers] are informed based on information and belief that even if [Medical Providers] had obtained an assignment from Patient to seek payment under the terms of Patient's Plan, [Medical Providers] would be prevented from doing so due to an anti-assignment provision in the Plan." PSAC, RE 30-1, Page ID # 179 ¶45.

"Following the procedure, [Medical Providers] submitted their claims to [Defendant] through BCBS accompanied with lengthy operative reports, chart notes, and other medical records. No matter

whether large or small, all of [Medical Providers'] claims were submitted to [Defendant] using CPT codes, Healthcare Common Procedure Coding System ('HCPCS'), and modifiers, as necessary. [Medical Providers] submitted to [Defendant] through BCBS any and all billing information and any and all additional information requested by [Defendant]." PSAC, RE 30-1, Page ID # 179 ¶46.

"[Defendant] processed some of the procedure codes, and denied others claiming they were not covered or medically necessary. Out of bills totaling $342,296.00 BCBS on behalf of Defendant made a payment of $1,598.40"—less than 0.5% of the billed amount. PSAC, RE 30-1, Page ID # 179 ¶47.

"The amount paid was well below the UCR amount promised and agreed upon between the parties. [Medical Provider] contends that the amount was based on Medicare in direct contradiction to the promises and agreement made." PSAC, RE 30-1, Page ID # 179 ¶48.

As Medical Providers had not been paid in accordance with their agreement with Appellees or based on BCBS' representations and promises on behalf of LZB, Medical Providers filed suit.

## II. Procedural History

On March 19, 2024, Medical Providers filed suit against LZB asserting claims for negligent misrepresentation and promissory estoppel in connection with Appellees' promises and representations. Notice of Removal, RE 1, Page ID # 9

On May 16, 2024, LZB removed the case to the Central District of California. Notice of Removal, RE 1, Pages ID # 1-8

On December 4, 2024, the case was transferred to Eastern District of Michigan. Order Granting Transfer, RE 4, Page ID # 57-59.

On January 24, 2025, Medical Providers filed a First Amended Complaint solely to add BCBS as a named defendant. First Amended Complaint, RE 11, Page ID # 29-39 (no change in factual allegations).

On March 5, 2025, BCBS filed a motion to dismiss the First Amended Complaint. BCBS Motion to Dismiss, RE 18, Page ID # 51-66.

On March 6, 2025, LZB filed a motion to dismiss the First Amended Complaint. LZB Motion to Dismiss, RE 19, Page ID # 67-89.

On March 19, 2025, Medical Providers filed their response to Appellees' motions to dismiss. Medical Providers' Omnibus Brief in Response to Motions to Dismiss, RE 21, Page ID # 91-125. Medical

Providers specifically sought leave to amend should the Court find any merit to Appellees' arguments. Medical Providers' Omnibus Brief in Response to Motions to Dismiss, RE 21, Page ID # 123 ("If the Court finds any merit to Defendants' arguments, Plaintiffs request that Plaintiffs be granted leave to amend.").

On August 4, 2025, the district court granted Appellees' motions to dismiss ***without leave to amend***. Order on Motions to Dismiss, RE 26, Page ID # 147-158.

On August 5, 2025, in accordance with L.R. 7-1, Medical Providers asked Appellees for a concurrence in seeking leave to amend. Motion for Leave to Amend, RE 30, Page ID # 164.

On August 13, 2025, Medical Providers filed their notice of appeal. Notice of Appeal, RE 28, Page ID # 160.

On August 19, 2025, Medical Providers filed their motion for leave to amend the First Amended Complaint in the hopes of the district court's reconsideration and avoidance of this appeal. Motion for Leave to Amend, RE 30, Page ID # 163-173.

On August 28, 2025, the district court denied Medical Providers' motion for leave to amend. Order on Motion for Leave to Amend, RE 31, Page ID # 188-189.

## SUMMARY OF THE ARGUMENT

The district court improperly relied on *Cromwell's* broad approach to ERISA preemption based on the language of "relate to" to dismiss Medical Providers' state law claims. Order on Motion to Dismiss, RE 26, Page ID # 158. However, the Supreme Court, in *Travelers*—***post***-dating *Cromwell*—clarified that a broad application of ERISA preemption based on the language of "relate to" is incorrect. *Travelers,* 514 U.S. at 655. The Sixth Circuit, state courts within the Sixth Circuit, and Sister Circuits have all since highlighted the required specificity—rather than breadth—of a preemption analysis. Medical Providers are very clear that they are not seeking payment based on Patient's health plan, and that Medical Providers' asserted rights are not those that Patient could ever assert. Rather, Medical Providers assert liability under common law laws of "general applicability" in the areas of "traditional state regulation," such as negligent misrepresentation or contract law. These are duties and obligations that Appellees owe solely and directly to

Medical Providers. Medical Providers' claims would exist against Appellees even were there no health plan at all. Furthermore, as Medical Providers do not assert any assignment from the Patient and Medical Providers assert that the health plan specifically prohibits an assignment, the claims at issue are not preempted even under *Cromwell*'s improperly broad analysis as they are based on a separate "legal duty between appellee, the Beckman plan and appellants[,]" *Cromwell*, 944 F.2d at 1276 n.3, and brought by Medical Providers who "do[] not qualify as a participant or beneficiary" and therefore "ERISA is not involved[,] *Lifeline*, 821 F. Supp. at 1211.

ERISA was created by Congress to protect patients. ERISA was ***not*** enacted to regulate the relationships between medical providers and ERISA insurers. *See Plastic Surgery*, 967 F.3d at 239 ("we will not assume that [ERISA] intended simultaneously to strip healthcare providers, such as the Center, of any meaningful remedy, particularly where the guidance from the Supreme Court, though limited, indicates otherwise.") (citing *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 834 (1988)). Denying medical providers—and Medical Providers in particular—their own direct rights to seek payment from

insurers and administrators, especially where the health plan prohibits an assignment from patients, would instead serve only to harm patient care:

> When employers and employees gave up state law causes of action because of ERISA, they received federal causes of action under ERISA in exchange. On the other hand, **ERISA does not provide a cause of action for aggrieved health care providers** that treat ERISA participants.

*Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1533-34 (11th Cir. 1994) (finding no preemption).

## STANDARD OF REVIEW

A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is a ruling on a question of law and is reviewed *de novo*. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008) ("The standard of appellate review for a motion to dismiss pursuant to Rule 12(b)(6) is *de novo*, and the Court will employ the same standard as the district court."). "The moving party has the burden of proving that no claim exists." *Id.* at 434. "All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Id.*

Since "all federal preemption … is an affirmative defense," *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018), dismissal based on preemption is appropriate only when defendant (or, as here, Appellees) satisfies its burden of showing that preemption appears "on the face of the complaint." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019); *see also Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021) ("Preemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument."). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford*, 907 F.3d at 603 n.8.

Additionally, "when the district court refuses the plaintiff's request for leave to amend her complaint on grounds of futility, this court reviews *de novo* because the decision is based on a legal conclusion" that no claim could ever be pleaded. *Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006).

## ARGUMENT

### I. Supreme Court Jurisprudence Since *Travelers* Mandates Changed Evaluation Of ERISA Preemption Of Pre-*Travelers* Cases (Including *Cromwell*)

Conflict/Express Preemption stems from the language of ERISA § 514, 29 U.S.C. § 1144(a), codified in 1974, which reads:

> [T]he provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter ***relate to*** any employee benefit plan.

In 1983, the Supreme Court set forth a foundation to address the unhelpful "relate to" language, explaining the scope of preemption in the first of a series of narrowing decisions, and defining "relate to" as meaning a "connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983). However, confusion and conflicting understanding ensued. In 1995, ***after*** the *Cromwell* decision, the Supreme Court further delineated the confines of ERISA preemption to counter the preemption overreach being affected by some courts:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere…." But that, of course, would be to read

> Congress's words of limitation as mere sham, and to read the **presumption against pre-emption** out of the law whenever Congress speaks to the matter with generality.

*Travelers*, 514 U.S. at 655 (original alterations). This refinement continued for decades to form a "workable standard[]." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016) (quoting part); *see also PONI,* 399 F.3d at 697 (observing that "[t]he United States Supreme Court has dealt with the 'opaque language in ERISA's § 514(a)' approximately twenty times over the last twenty-four years."). Relatedness must not be read literally, but instead must be construed pragmatically to achieve the underlying legislative intent; courts "must go beyond the unhelpful ['related to'] text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813-14 (1997). "[A] broad reading 'would be to read Congress's words of limitation as mere sham and to read the presumption against preemption out of the law[.]'" *PONI,* 399 F.3d at 697 (citing, *inter alia*, *Travelers*, 514 U.S. at 656).

To provide some "workable standards" "beyond the unhelpful text" of the preemption provision, the Supreme Court has expounded upon the "two categories of state law claims that 'relate to' an ERISA plan—claims that have a 'reference to' an ERISA plan, and claims that have 'an impermissible connection with' an ERISA plan." *Gobeille*, 577 U.S. at 319-20. As articulated by the Supreme Court:

> First, ERISA pre-empts a state law if it has a reference to ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation that reference will result in pre-emption. Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration.

*Gobeille*, 577 U.S. at 319-20 (cleaned up). A "reference to" finding requires that the state law be ***specifically directed*** to the ERISA plan. Where the claim or law applies equally to all insurers "regardless of whether the commercial coverage was ultimately secured by an ERISA plan, private purchase, or otherwise," the claim does not "refer to" an ERISA plan. *Rutledge,* 592 U.S. at 89. A "connection with" finding requires the state law to bind an ERISA plan to a ***particular***

***choice*** in its overall administration; where it does not, it has only "indirect economic influence" and is not preempted. *Id*. at 87. "[A]ffect[ing] an ERISA plan or caus[ing] some disuniformity in plan administration [does not create an] impermissible connection with an ERISA plan." *Id*. Similarly, state laws "that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme or substantive coverage" are not preempted by ERISA. *Id*. at 88.

Each Supreme Court decision harkens the same singular theme: preemption must be interpreted narrowly and judiciously, to not override state law except where specifically bargained for. *See Travelers*, 514 U.S. at 654 ("[D]espite the variety of these opportunities … we have never assumed lightly that Congress has derogated state regulation, … [instead applying the] starting presumption that Congress does not intend to supplant state law."); *De Buono*, 520 U.S. at 814 ("Congress does not intent to supplant state law."); *Gobeille*, 577 U.S. at 319 (Broad ERISA preemption "is a result 'no sensible person could have intended.'") (quoting *Dillingham*, 519 U.S. at 336 (Scalia, J., concurring)); *Rutledge*, 592 U.S. at 88 ("The logic of *Travelers* decides

this case."). Yet the district court erroneously followed, and even ***extended*** (*see* Section II.D below) *Cromwell*, which—due to a misunderstanding of the then-available Supreme Court caselaw, which predated *Travelers*, *Gobeille*, and others—applied the opposite principle.

## II. Medical Providers' Claims Are Not Subject To Conflict/Express Preemption Because Of *Cromwell*

The district court, relying solely on *Cromwell* and ignoring binding Supreme Court and Sixth Circuit precedent, found Conflict/Express Preemption of Medical Providers' claims.[9] As evidenced by the proceeding section, *Cromwell* lacked the benefit of the last 30-plus years of Supreme Court analysis and guidance, rendering the district court's extension of *Cromwell* based on *Cromwell*'s preemption approach in error. In contrast, caselaw with the benefit of *Travelers*—including in this Circuit, in the relevant states, and out of this Circuit, each discussed below—support a finding that Medical Providers' claims are

[9] Appellees only argued, and the district court only considered and ruled based on, "connection with" Conflict/Express preemption. Order on Motion to Dismiss, RE 26, Page ID # 151; BCBS Motion to Dismiss, RE 18, Page ID # 51-66; LZB Motion to Dismiss, RE 19, Page ID # 67-89. Thus, while Medical Providers discussed both the "reference to" and "connection with" analysis in their briefing before the district court, they do not do so here. Medical Providers' Opposition to Motion to Dismiss, RE 21, Page ID # 108-122.

not Conflict/Express preempted.

Further, *Cromwell*'s holding itself does not even mandate the district court's preemption finding. *Cromwell*, and the judge who authored its majority opinion, do not support the district court's decision. *Cromwell's* holding related ***only*** to the preemption of claims made based on an assignment of benefits (or in circumvention of an assignment of benefits) under an ERISA plan, and ***not those*** based on a separate "legal duty between appellee, the [ERISA] plan and appellants[.]" *Cromwell*, 944 F.2d at 1276 n.3; *see also Lifeline*, 821 F. Supp. at 1211 (finding claims by provider, i.e. individuals who "do[] not qualify as a participant or beneficiary" not preempted); *Lifeline 2*, 827 F. Supp. at 446 (extending same for promissory estoppel and misrepresentation claims). Here, Medical Providers do not assert an assignment from the Patient—nor can they due to the plan's anti-assignment provision—but rather assert separate contractual rights of the variety expressly ***allowed*** as not preempted by *Cromwell*'s author. *Lifeline 2*, 827 F. Supp. at 446 (promissory estoppel and misrepresentation not preempted).

### A. Sixth Circuit Caselaw Supports That Medical Providers' Claims Are Not Conflict/Express Preempted By ERISA

The Sixth Circuit, in discussing Conflict/Express preemption, has held:

> In determining whether a state law has an impermissible connection with ERISA plans, **we start with the presumption that Congress did not intend to preempt state laws**, particularly in areas of traditional state concern…ERISA does not create a state-law-free zone around everything that affects an ERISA plan. Therefore, [the party claiming preemption] must show that the [relevant law or claim] (1) **mandates an aspect of law with which ERISA is concerned**, such as the administration of the plan itself, or (2) interferes with the **relationship between ERISA-covered entities**.

*Self-Insurance Inst. of Am., Inc. v. Snyder*, 761 F.3d 631, 635-36 (6th Cir. 2014), *reaffirmed after reconsideration*, 827 F.3d 549, 553-54 (6th Cir. 2016).

ERISA provides a cause of action for those ***within*** the ERISA relationship; it does not negate causes of action ***outside*** of ERISA entities:

> ERISA gives plans the ability to sue and be sued in their own right. See 29 U.S.C. § 1132(d)(1). … When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to

state law.

*Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir. 1999). The Sixth Circuit's instruction to look to the parties' relationships[10] is analogous to tests set forth in the Fifth Circuit—first presented in *Memorial Hospital System v. Northbrook Life Insurance Co.*—and the Ninth Circuit—articulated as the "relationship test," both of which are discussed further in Section II.C below. *See, e.g.*, *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011) (setting forth test articulated in *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 247 (5th Cir. 1990)); *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1031 (9th Cir. 2021) ("We have employed a 'relationship test' in analyzing 'connection with' preemption"). Where a party seeks "to enforce a contract between it [and a third party] independent of the plan" and not based on an "allege[d ] breach of any plan provision," that claim is outside the ERISA relationship and not preempted. *Aldridge*, 144 F.4th at 840

---

[10] As mentioned above and discussed further below in Section II.D, *Cromwell* and *Lifeline* similarly support that claims made by a non-ERISA entity ***in its own right*** are not part of the ERISA-relationship and not preempted.

(finding claims by plan participants against plan preempted). "Congress did not intend, however, for ERISA to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities." *PONI,* 399 F.3d at 698. Under the Sixth Circuit's two-factor preemption analysis, Medical Providers' claims are not preempted by ERISA.

First, Medical Providers' claims do not "mandate[] an aspect of law with which ERISA is concerned, such as the administration of the plan itself." *Self*-Insurance, 761 F.3d at 636. The PSAC asserts only state law claims for breach of oral contract, misrepresentation and promissory estoppel, not plan administration. Medical Providers do not seek to alter health plan administration or the health plan at all. Rather, they seek payment based on the direct promises and representations made to them by Appellees:

> Medical Providers' promissory estoppel, negligent misrepresentation and breach of oral contract claims ("Provider Claims") are asserted solely based upon the individual and proper rights of Medical Providers in their own individual capacity and are not derivative of the contractual or other rights of the Medical Providers' Patient. The Provider Claims arise from BCBS's promises on behalf of Defendant during the communications between only Medical Providers and BCBS on

> behalf of Defendant. Patient was not in any way involved in the communications and the promises. Provider Claims are solely based on the promises and representations during those communications. Provider Claims make no reference to or connection with any rights that Patient might have under Patient's health plan. For the Provider Claims, Medical Providers do not in any way seek to enforce the contractual rights of the Medical Providers' Patient, through the Patient's insurance contract, policies, certificates of coverage or other written insurance agreements.

PSAC, RE 30-1, Page ID # 177-178 ¶10.

> As Medical Providers had been paid by BCBS at the UCR rate on numerous occasions, Medical Providers relied and provided services solely based on BCBS's representations, promises and statements on behalf of [Defendant] that payment is and would be at the UCR rate [i.e. based on Fair Health]. Statements which had no relation to [Defendant] and Patient's plan document, as the statements may or may not have been based in the [Defendant] or Patient's plan documents, but that bore no consideration when Medical Providers agreed to provide medical services. Medical Providers took BCBS's representations on behalf of [Defendant] at face value and provided services based solely on those promises and representations.

PSAC, RE 30-1, Page ID # 179 ¶44. Medical Providers do not seek benefits or anything owed based on the Patient's plan. To the contrary. The causes of action and damages calculations arise solely from the

representations/misrepresentations made in light of industry wide data (Fair Health data—a payment metric). *See id.*

Second, Medical Providers' claims also do not have a "connection with" ERISA as Medical Providers are not ERISA entities and do not assert to stand in the shoes of an ERISA entity. PSAC, RE 30-1, Page ID # 179, ¶¶10, 44; *Smith*, 170 F.3d at 617 (relationship between ERISA-entity with non-ERISA entity not governed by ERISA); *Lifeline*, 821 F. Supp. at 1211 (where "plaintiff does not qualify as a participant or beneficiary" as "ERISA is not involved" in such an action. 821 F. Supp. 1201, 1211 (E.D. Mich. 1993); *Lifeline 2*, 827 F. Supp. at 446 (extending same). Nor could they. PSAC, RE 30-1, Page ID # 179, ¶11; BCBS Motion to Dismiss, RE 18, Page ID # 64-65 (noting plan non-assignment provision). Medical Providers' claims do not affect the relationship between traditional ERISA entities. As such, Medical Providers' claims are not preempted by ERISA. *E.g.*, *Self-Insurance*, 761 F.3d at 635-636; *Smith*, 170 F.3d at 617.

### B. State Court Caselaw Within The Sixth Circuit Supports That Medical Providers' Claims Are Not Preempted By ERISA

Michigan and Ohio State decisions highlight the changing ERISA-preemption landscape since *Cromwell*, and the impact of *Travelers* and other Supreme Court precedent on the ERISA preemption analysis.

In 1994, the Michigan Court of Appeals relied on *Cromwell* among other cases to find preemption of a medical provider's state law causes of action. *See BPS Clinical Lab. v. Blue Cross & Blue Shield,* 206 Mich. App. 570, 584 (1994) ("we find plaintiffs' claims are preempted under the ERISA"). However, by the time it reached the Michigan Supreme Court, *Travelers* had been decided. The Michigan Supreme Court then remanded the case "for reconsideration in light of [] *Travelers*[.]" 217 Mich. App. at 691. On remand, the Michigan Court of Appeals reversed itself, finding the claims that it previously found preempted based in part on *Cromwell* not preempted based on *Travelers*. *See BPS*, 217 Mich. App. at 697 ("ERISA does not preempt plaintiffs' claims"). The Michigan Court also pointed to Sister Circuit cases, including *Lordmann* (11th Cir.), as being consistent with the now more clearly articulated Supreme Court precedent. *See BPS*, 217 Mich. App. at 697.

*Lordmann*, as discussed in Section II.C below, is based in the present facts and demonstrates why Medical Providers' claims are not preempted as they are outside the ambit of the ERISA statutory scheme and ERISA relationships.

In *Administration Systems*, the Michigan Court of Appeals again considered an assertion of alleged ERISA-preemption and again found no preemption, relying on Supreme Court precedent and *Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999) (also discussed in Section II.C below) to find no preemption. *Admin. Sys.*, 2017 Mich. App. LEXIS 1817, at *14-15 ("These cases recognize that, even if an ERISA plan might be consulted for some reason during the course of litigation, disputes involving the rate of payment under ***an agreement separate from the ERISA plan involve a duty independent of ERISA***."). In *Administration Systems*, too, the Michigan Court of Appeals noted that *Cromwell* was not the appropriate authority as it predates, and is inconsistent with, recent Supreme Court decisions. *Id.* at *14, n.4.

The Ohio Court of Appeals has similarly distinguished the logic in *Cromwell* in light of *Travelers* to find that a third party's claims were

***not*** ERISA preempted. *See e.g. Immediate Pharm.*, 134 Ohio App. 3d at 753. The Ohio Court of Appeals further noted that *Cromwell's* holding was limited to a derivative claim, and not one based on a separate legal right:

> However, in *Cromwell*, the plaintiff health care provider's right to recovery was premised solely on an assignment of plan benefit to the provider from an alleged plan beneficiary, and the trial court determined that the provider procured an assignment of benefits from the alleged beneficiary without ensuring that it conveyed any right to benefits under the plan. Thus, in *Cromwell* the trial court would have been required to determine whether the assignor beneficiary was entitled to benefits *under the ERISA plan* in order to establish plaintiff's right to recovery.

*Id*. at 751 (emphasis in original).

### C. Sister Circuit Cases Support That Medical Providers' Claims Are Not Preempted By ERISA

Sister Circuits addressing the specific factual scenario here—separate claims for payment by a medical provider—have found that the medical provider-to-plan/insurer relationship is not one implicated by ERISA and that the claims are not preempted.

The Third Circuit, in *Plastic Surgery*, held in 2020 that a plaintiff medical provider's claims based on oral representations did not have a

"connection with" an ERISA plan, and therefore were not preempted, because they were not between parties regulated by ERISA:

> ERISA governs relationships among the employer, the plan and its fiduciaries, and the participants and beneficiaries. **Critically, however, out-of-network healthcare providers "were not . . . party to this bargain**. Health care providers such as the Center orbit the periphery of this bargain, but their rights and remedies are not delineated in ERISA's substantive or remedial provisions. For this reason, the Courts of Appeals have overwhelmingly held that claims akin to the Center's are not expressly preempted because, as pleaded, **they arise out of a relationship ERISA did not intend to govern at all**. [citing cases].

*Plastic Surgery*, 967 F.3d at 236-37 (cleaned up); *id.* at 237 ("the Center alleges that Aetna must pay the costs of these services only because, and to the extent, it promised the Center that it would"—i.e. a claim not preempted because it arose out of an obligation independent from the plan) (citations omitted).

Similarly, each of the Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits is in accord, holding that a medical provider's claim for payment from the plan based on separate representations are not preempted:

> The state law underlying Access's misrepresentation claims does not purport to regulate what benefits United provides to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services. To prevail on these claims, **Access need not show that United breached the duties and standard of conduct for an ERISA plan administrator, because Access's alleged right to reimbursement does not depend on the terms of the ERISA plans**. It is immaterial whether the alleged statements regarding the extent that the patients' plans covered Access's services were correct or incorrect as descriptions of the plans' terms. As assurances of how much Access would be paid, the statements are belied by United's subsequent refusal to reimburse some or all of Access's claims.

*Access*, 662 F.3d at 385 (5th Cir.).

> Home Health is not suing for plan benefits. **It is suing for Prudential's misrepresentation** that Rich had not exceeded his $1 million limit of benefits. … Allowing Home Health to proceed with its claim for negligent misrepresentation **would not negate any plan provision**.

*Home Health v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 605 (8th Cir. 1996).

> Hospice, however, is **not a participant or a beneficiary** as enumerated in the Supreme Court opinion or in the statute itself ... we conclude that a state law claim which does not affect the "relations among the principal ERISA entities, the

> employer, the plan, the plan fiduciaries, and the beneficiaries" as such, **is not preempted by ERISA**.

*Hospice of Metro Denver, Inc. v. Grp. Health Ins., Inc.*, 944 F.2d 752, 755-56 (10th Cir. 1991).

> **[H]ealth care providers [are] parties beyond ERISA's scope** … a health care provider's claim against a provider of insurance under the plan affects the relationship between the principal ERISA entities at best only indirectly. … [W]e hold that **ERISA does not preempt a health care provider's negligence misrepresentation claim against an insurer under an ERISA plan**."

*Lordmann*, 32 F.3d at 1533-34 (11th Cir.) (cited by *BPS*, 217 Mich. App. at 691).

> As with many state laws of general applicability, the **[medical providers]' state law claims** [asserting breaches of promises independent of the plan] … have only a 'tenuous, remote, or peripheral connection with covered plans,' and therefore are **not preempted**.

*Blue Cross*, 187 F.3d at 1054 (9th Cir.) (cited by *Admin. Sys.*, 2017 Mich. App. LEXIS 1817).

Each of these Sister Circuits—along with the Second Circuit—has also found that preempting a medical provider's state law claims would undermine legislative intent. As summarized by the Third Circuit,

citing to the Supreme Court and the Fifth, Eighth, and Eleventh Circuits:

> But **protection of plan participants and beneficiaries is not advanced by extending express preemption to out-of-network providers** and limiting their universe of remedies to those outlined in section 502(a). …
> Although Congress has narrowed the universe of remedies available to participants and beneficiaries, we **will not assume that it intended simultaneously to strip healthcare providers**, such as the Center, of any meaningful remedy, particularly where the guidance from the Supreme Court, though limited, indicates otherwise. *See Mackey*, 486 U.S. at 834 (1988) (holding that ERISA does not preempt "state-law methods for collecting money judgments … [because] otherwise, there would be no way to enforce such a judgment won against an ERISA plan").
> **Indeed, if anything, that would disserve ERISA's statutory objectives**. To accept Aetna's argument would be to accept the **troubling proposition** that an out-of-network provider's right to recourse may be bargained away by insurers and plan participants in the terms of an ERISA plan to which the provider is not a party and which it likely has had no opportunity to review before it provides care. **It would in effect allow insurers to illegitimately supplement their provider network by making promises of payment to induce the provision of services, safe in the knowledge that those out of network would have no recourse for breach of those promises**. The consequence, as recognized by

> other Courts of Appeals, would be for providers to begin to require up-front payments from patients or to "deny care or raise fees to protect themselves against the risk of noncoverage." *Lordmann*, 32 F.3d at 1533; *accord In Home Health*, 101 F.3d at 606-07; *Mem'l Hosp.*, 904 F.2d at 247-48. That is a far cry from "protect[ing] plan participants and beneficiaries." *Gobeille*, 136 S. Ct. at 943 (citation omitted). "[T]he objectives of the ERISA statute," *id.*, thus also indicate the Center's claims do not have an impermissible "connection with" the ERISA plans.

*Plastic Surgery*, 967 F.3d at 238-39 (3d Cir.). The Ninth, Tenth, and Second Circuits hold the same. *See Blue Cross*, 187 F.3d at 1054 (9th Cir.); *Hospice of Metro Denver*, 944 F.2d at 756 (10th Cir.); *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017).

### D. *Cromwell* Does Not Demand Preemption In This Factual Scenario

Despite including significant dicta—based on a now-shown to be incorrect understanding of the Supreme Court's approach to preemption—*Cromwell* found preemption ***only*** on a derivative claim—i.e. where the provider had an assignment from the patient and the preempted claims were those governed by ERISA. *See Mich. Affiliated Healthcare*, 139 F.3d at 550 ("in that case [*Cromwell*], the provider

received a valid assignment of benefits. That is not the situation here, as Lansing General is proceeding on a breach of contract cause of action, not on behalf of the beneficiary."). The *Cromwell* majority opinion (by a single judge, with the other two justices issuing a concurrence and dissent) was explicit that it was ***not finding*** preemption as to claims based on a separate "legal duty" between the provider and the plan:

> As the district court pointed out, appellants agreed to provide health care services to the Reinkes without requiring proof of insurance or other adequate security. Appellants did not ask to be notified if coverage lapsed, nor did they investigate what circumstances might cause coverage to lapse or whether there was any limit on coverage. They procured an assignment of benefits without ensuring that it conveyed any right to benefits under the plan. **In the absence of any legal duty between appellee, the Beckman plan and appellants, ERISA negates appellants' attempt to make appellee and the plan an after-the-fact insurer of the Reinke's private debt.**

*Cromwell*, 944 F.2d at 1276 n.3; *see also Mich. Affiliated Healthcare*, 139 F.3d at 550 751 (discussing *Cromwell*); *Immediate Pharm.*, 134 Ohio App. 3d at 751 (same).

Here, as asserted in the PSAC, Medical Providers' claims are based on multiple separate legal duties (breach of separate oral contract, misrepresentation and promissory estoppel claims not connected to any health plan). PSAC, RE 30-1, Page ID # 176-177, 181 ¶¶10, 44; *see Lifeline 2*, 827 F. Supp. at 446. The PSAC does not assert an assignment from the Patient, and further pleads that the health plan prohibits any derivative rights based on the health plan between Medical Providers and Appellees (anti-assignment provision). PSAC, RE 30-1, Page ID # 182 ¶45. Such claims are not preempted. *See* Sections II.A., II.B, & II.C, above.

*Cromwell* is further distinguishable as the question before it was one of a right to payment –i.e. whether the plan would cover the patient at all. *Cromwell*, 944 F.2d at 1275 ("no longer be covered"). In contrast, cases dealing with the extent of payment—i.e. the amount of payment owed—have found that such questions are further removed from ERISA and not preempted. *See e.g. Brown v. Bluecross Blueshield of Tenn., Inc.*, 827 F.3d 543, 548 (6th Cir. 2016); *Blue Cross*, 187 F.3d at 1051 (where state law claim was "not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but* **the**

***amount, or level, of payment***" based on representations made outside of the plan there was no preemption); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009) ("We agree with these courts that the "rate of payment" and "right of payment" distinction is a useful means for assessing preemption").

The present case does not solely relate to coverage, but rather to payment amount. Appellees processed some of the procedure codes and denied others, and paid less than 0.5% of the billed amount. PSAC, RE 30-1, Page ID # 182 ¶47.

Appellants respectfully request that the Court distinguish *Cromwell* and provide Medical Providers with their independent right and avenue of recovery in these factual circumstances. The alternative, of no recourse to providers against insurers, would certainly hurt patients financially and could hurt patients in the care they received. Such an alternative result is contrary to the purpose of ERISA. *See* Section II.C, above (discussing, *inter alia*, *Plastic Surgery*, 967 F.3d at 238-39; *Blue Cross*, 187 F.3d at 1054; *Hospice of Metro Denver*, 944 F.2d at 756; *McCulloch*, 857 F.3d at 148).

## III. Medical Providers Should Have Been Granted Leave To Amend

In dismissing Medical Providers' state law claims without leave to amend, the district court implicitly found that there was ***no*** way a provider's claims based on an independent oral representation could ***ever*** not be preempted by ERISA. Order on Motion to Dismiss, RE 26, Page ID 158. This was in error. The district court at minimum should have granted Medical Providers leave to amend to add what the district court would have considered a separate legal duty which would not have been preempted even by *Cromwell*. *Cromwell.*, 944 F.2d at 1276 n.3; *Lifeline*, 821 F. Supp. at 1211 (finding claims by provider, i.e. individuals who "do[] not qualify as a participant or beneficiary" not preempted); *Lifeline 2*, 827 F. Supp. at 446 (extending same).

## CONCLUSION

For the reasons set forth above, Medical Providers respectfully request that the Court reverse the judgment of the district court and remand the matter to the district court with directions to proceed with the case.

Dated: December 23, 2025

Respectfully submitted,

Law Office of Jonathan A. Stieglitz

By: /s/ Jonathan A. Stieglitz

Jonathan A. Stieglitz
Attorneys for Plaintiffs-Appellants Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; And Advanced Weight Loss Surgical Associates

**CERTIFICATION OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), the attached Opening Brief is proportionally spaced, has a typeface of 14 points or more, and contains 8,323 words.

Dated: December 23, 2025

Respectfully submitted,

Law Office of Jonathan A. Stieglitz

By: /s/ Jonathan A. Stieglitz

Jonathan A. Stieglitz
Attorneys for Plaintiffs-Appellants Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; And Advanced Weight Loss Surgical Associates

**ADDENDUM**


1) Notice of Removal, RE 1, Page ID # 1-38

2) Order Granting Transfer, RE 4, Page ID # 57-59

3) First Amended Complaint, RE 11, Page ID # 29-39

4) BCBS Motion to Dismiss, RE 18, Page ID # 51-66

5) LZB Motion to Dismiss, RE 19, Page ID # 67-89

6) Medical Providers' Omnibus Brief in Response to Motions to Dismiss, RE 21, Page ID # 91-125

7) Order on Motions to Dismiss, RE 26, Page ID # 147-158

8) Notice of Appeal, RE 28, Page ID # 159

9) Motion for Leave to Amend, RE 30, Page ID # 163-173

10) Proposed Second Amended Complaint, RE 30-1, Page ID # 174-187

11) Order on Motion for Leave to Amend, RE 31, Page ID # 188-189