**25-1727**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LAUREL HILL MANAGEMENT SERVICES, INC.; MINIMALLY INVASIVE SURGICAL ASSOCIATES; AND ADVANCED WEIGHT LOSS SURGICAL ASSOCIATES,

*Plaintiffs - Appellants,*

v.

LA-Z-BOY INCORPORATED; AND BLUE CROSS BLUE SHIELD OF MICHIGAN

*Defendants – Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
CASE NO: 2:24-cv-13230-DML-KGA
THE HONORABLE DAVID M. LAWSON, DISTRICT JUDGE

**APPELLANTS' REPLY BRIEF**

**LAW OFFICE OF JONATHAN A. STIEGLITZ**
JONATHAN A. STIEGLITZ
11845 W. OLYMPIC BLVD., SUITE 800
LOS ANGELES, CA 90064
(323) 979-2063
jonathan@stieglitzlaw.com

COUNSEL FOR PLAINTIFFS-APPELLANTS
LAUREL HILL MANAGEMENT SERVICES, INC.; MINIMALLY INVASIVE SURGICAL ASSOCIATES; AND ADVANCED WEIGHT LOSS SURGICAL ASSOCIATES

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ 2

TABLE OF AUTHORITIES ........ 4

INTRODUCTION ........ 7

ARGUMENT ........ 11

I. Appellees Do Not Apply The Sixth Circuit's Actual ERISA Preemption Analysis ........ 11

A. Appellees Rely On An "Uncritical Literalism" Explicitly Rejected By The Supreme Court And This Court ........ 12

B. Appellees Have Failed To Demonstrate ERISA Preemption Under *Self-Insurance*, *PONI* Or Any Post-*Travelers* Sixth Circuit Decision ........ 13

II. Appellees Ignore Or Misunderstand Medical Providers' Arguments Relating To *Cromwell* ........ 14

A. Appellees' Cited Authority Does Not Support The Broad "Relate To" ERISA Standard From *Cromwell* ........ 16

B. Appellees Never Apply *Cromwell's* Preemption Analysis As Articulated In Footnote 3 ........ 21

C. Appellees Fail To Explain How Medical Providers' Application Of Sixth Circuit Caselaw, Including *Cromwell*, Is Incorrect ........ 23

III. Sister Circuit Authority Clearly Supports Reversal ........ 28

A. LZB's Cited Cases Are Factually Inapposite And Do Not Support Preemption Here ........ 29

B. BCBS' Attempts to Distinguish Medical Providers' Authority Are Incorrect ........ 33

IV. Appellees Wrongfully Argue Medical Providers' Claims Arise "Under The Plan"; The Calculation Of Damages And All Other Factual Questions Are Independent From The Plan ........ 37

A. The "UCR" Rate is an External Industry Benchmark, Not A Plan Term ........ 37

B. Damages are Calculated Solely from the Verification Call Data ........ 38

V. The District Court Abused Its Discretion By Dismissing The Action With Prejudice Without Granting Medical Providers A Single Opportunity To Amend ........ 39

CONCLUSION ........ 40

CERTIFICATION OF COMPLIANCE ........ 41

CERTIFICATION OF SERVICE ........ 42

## TABLE OF AUTHORITIES

**Cases**

*Aldridge v. Regions Bank*
144 F.4th 828 (6th Cir. 2025) .................................................... 7

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
662 F.3d 376 (5th Cir. 2011) ............................28, 29, 33, 34, 35

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
103 F.4th 597 (9th Cir. 2024),....................29, 30, 31, 32, 33, 36

*Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*,
187 F.3d 1045 (9th Cir. 1999) .................................................. 31

*Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*,
321 F. App'x 563 (9th Cir. 2008) ............................................. 31

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
497 F.3d 972, 980 (9th Cir. 2007) ........................................... 30

*City of Hope Nat'l Med. Ctr. v. AFL Hotel & Rest. Workers' Health & Welfare Plan*,
446 F. App'x 53 (9th Cir. 2011) ............................................... 31

*Cromwell v. Equicor-Equitable HCA Corp.*
944 F.2d 1272 (6th Cir. 1991 ...........................................*passim*

*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc.*,
532 F. Supp. 3d 956, 967 (S.D. Cal. 2021) ..........................29, 32

*Hermann Hosp. v. MEBA Med. & Ben. Plan*,
845 F.2d 1286 (5th Cir. 1988) .................................................. 35

*Home Health v. Prudential Ins. Co. of Am.*,
101 F.3d 600 (8th Cir. 1996) ..................................28, 33, 34, 36

*Langley v. DaimlerChrysler Corp.*,
502 F.3d 475 (6th Cir. 2007) .................................................... 18

*Lifeline, Ltd. No. II v. Connecticut General Life Insurance Co.*
821 F. Supp. 1201 (E.D. Mich. 1993) ........................................ 26

*Lion's Volunteer Blind Indus. v. Automated Grp. Admin., Inc.*,
195 F.3d 803 (6th Cir. 1999**)** ................................................... 19

*Local No. 1654, IBEW v. L.G. Philips Display Components Co.*,
137 F. App'x 776 (6th Cir. 2005) .............................................. 18

*Lordmann Enters. v. Equicor, Inc.*,
32 F.3d 1529 (11th Cir. 1994) ..................... 28, 29, 33, 34, 35, 36

*Mazur v. Unum Ins. Co.*,
590 F. App'x 518, 519 (6th Cir. 2014) .............................8, 16, 17

*Merritt v. Flextronics Int'l USA, Inc.*,
2024 U.S. App. LEXIS 16380 (6th Cir. July 3, 2024).....8, 16, 17

*McLemore v. Regions Bank*,
682 F.3d 414 (6th Cir. 2012) ...................................................... 17

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
857 F.3d 141 (2d Cir. 2017)....................................................... 33

*Mich. Affiliated Healthcare Sys. v. CC Sys. Corp.*
139 F.3d 546 (6th Cir. 1998) ...................................................... 18

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) .........................................................*passim*

*Pac. Recovery Sols. v. United Behav. Health,*
481 F. Supp. 3d 1011 (N.D. Cal. 2020) ...............................29, 33

*Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*,
2024 U.S. App. LEXIS 13227 (2d Cir. June 3, 2024)....29, 32, 36

*Peach v. Ultramar Diamond Shamrock,*
229 F. Supp. 2d 759 (E.D. Mich. 2002) ...............................16, 17

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*
399 F.3d 692 (6th Cir. 2005) ............................................*passim*

*Peters v. Lincoln Elec. Co.*,
285 F.3d 456 (6th Cir. 2002) ........................................18, 19, 39

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020)....................................28, 29, 33, 34

*Self-Insurance Inst. of Am., Inc. v. Snyder*
761 F.3d 631 (6th Cir. 2014) ......................10, 12, 13, 14, 26, 27

*Smith v. Commonwealth Gen. Corp.*,
589 F. App'x 738 (6th Cir. 2014),.......................................16, 17

*Smith v. Provident Bank*,
170 F.3d 609 (6th Cir. 1999), .................................................. 25

*Ward v. Alt. Health Delivery Sys.*
261 F.3d 624 (6th Cir. 2001) .................................................... 18

*Zuniga v. Blue Cross & Blue Shield*,
52 F.3d 1395 (6th Cir. 1995) .................................................... 20

**<u>Rules</u>**

Fed. R. App. Proc. 32(a)(7) ................................................................ 41

## INTRODUCTION[1]

Appellees[2] argument is singular—ERISA[3] preemption begins and ends with *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991). For Appellees, all other jurisprudence and even the specific facts and analysis of *Cromwell* itself are irrelevant.

However, as discussed at length in Medical Providers' Opening Brief, following *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* ("*Travelers*"), *Cromwell*, while still good law (albeit in a very broad and limited sense), does not provide a *means* of conducting modern ERISA preemption analysis in the Sixth Circuit. *See, e.g.*, *Aldridge v. Regions Bank*, 144 F.4th 828, 838-39 (6th Cir. 2025) (relying and applying the reasoning of *Travelers* and modern

---

[1] All internal alterations, quotation marks, footnotes, and citations are omitted, and all emphases are added, unless noted.

[2] "Appellees" are La-Z-Boy Incorporated ("LZB") and Blue Cross Blue Shield of Michigan ("BCBS"). "Appellants" or "Medical Providers" are Laurel Hill Management Services, Inc. (the assignee of Bay City Surgery and Town Center Surgery), Minimally Invasive Surgical Associates, and Advanced Weight Loss Surgical Associates. "LZB AB" refers to LZB's Answering Brief. "BSBC AB" refers to BSBS' Answering Brief. All citations to Appellees' Briefs are to the ECF/PDF page numbers.

[3] All statutory references are to the Employee Retirement Income Securities Act of 1974 ("ERISA") unless noted.

Sixth Circuit authority (including their tests and standards), and making no mention of *Cromwell*). While Medical Providers highlight the significant weakness in relying on *Cromwell* (let alone *solely* on *Cromwell*) in light of ERISA preemption caselaw within the Sixth Circuit and uniform interpretation of post-*Cromwell* Supreme Court precedent, Appellees tersely shrug off each argument or ignore arguments entirely.

Appellees do not even attempt to apply the Sixth Circuit's ERISA preemption analyses. Instead, Appellees find somewhat recent unpublished Sixth Circuit opinions that ***reference*** *Cromwell* to argue that *Cromwell* supports preemption. *See e.g. Merritt v. Flextronics Int'l USA, Inc.*, 2024 U.S. App. LEXIS 16380, at *1 (6th Cir. July 3, 2024); *Mazur v. Unum Ins. Co.*, 590 F. App'x 518, 519 (6th Cir. 2014). However, referencing *Cromwell* for a general proposition that ERISA preemption is broad when involving traditional ERISA entities or where a claim is clearly for plan benefits does nothing. Citing a case for a general proposition is not the same as following or applying its specific analysis. And this is key because Appellees completely ignore the actual analysis of the facts in *Cromwell*.

*Cromwell*'s footnote 3 shows the ERISA preemption determination was predicated on an attempt to assert an assignment and an "absence of any legal duty". *Cromwell*, 944 F.2d at 1276 n.3. These facts are inapplicable here. Opening Brief ("OB") 18-21; Proposed Second Amended Complaint ("PSAC"), RE 30-1, Page ID # 179-182 ¶¶26-48 (discussing independent legal duties based on BCBS' direct representations (negligent misrepresentation) and promises (breach of oral contract and promissory estoppel) to Medical Providers); *id*. Page ID # 182 ¶45 (noting health plan (the "Plan")[4] anti-assignment). The Opening Brief emphasizes footnote 3, yet BCBS completely ignores footnote 3 (no response at all) and LZB only responds "footnote 3 says nothing of the sort," without explaining its application. LZB AB 30-31.

By relying on *Cromwell* while ignoring its factual limitations, Appellees ask this Court to apply a holding regarding assigned benefits and an absence of a direct legal duty to a dispute involving an asserted direct legal duty both as a result of independent tortious misrepresentations and independent contractual claims—a context the

[4] Despite Appellees' assertion that the claim is predicated on the Plan (it is not), Appellees have never provided a copy of Plan in any forum.

*Cromwell* court itself did not contemplate. *Compare* PSAC, RE 30-1, Page ID # 178-182 ¶¶18-48 *with Cromwell*, 944 F.2d at 1276 n.3.

Furthermore, Appellees' arguments rely on a rigid focus on the First Amended Complaint ("FAC") while entirely ignoring the PSAC. While the FAC is the current operative complaint due to the district court's dismissal with prejudice, the PSAC demonstrates that any perceived intertwining with the Plan was a matter of phrasing, not substance. In choosing to completely ignore the pleadings in the PSAC, Appellees ask this Court to ignore the mandate that leave to amend should be freely given to cure perceived pleading defects, and tacitly concede that the PSAC would cure any alleged defects.

Ultimately, Appellees seek to avoid the Sixth Circuit's actual preemption framework, as set forth in cases like *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp. ("PONI")*, 399 F.3d 692 (6th Cir. 2005) and *Self-Insurance Inst. of Am., Inc. v. Snyder*, 761 F.3d 631 (6th Cir. 2014), *reaffirmed after reconsideration*, 827 F.3d 549 (6th Cir. 2016). Because Appellees cannot defeat the independent legal duties Medical Providers actually pleaded—or could plead upon leave to amend—under these controlling standards, they

have chosen to rely on an overbroad application of a factually inapposite and legally antiquated case.

Medical Providers respectfully request that this Court reverse and remand for further proceedings in this case.

## ARGUMENT

### I. Appellees Do Not Apply The Sixth Circuit's Actual ERISA Preemption Analysis

In an attempt to cloak their outdated arguments in modern authority, both Appellees cite the ERISA preemption test articulated in *PONI*. LZB AB 20; BCBS 17. However, Appellees never actually apply this test to the facts of this case. Instead, they use their citation to *PONI*'s test as a mere pass-through to return to the broad, pre-*Travelers* "relate to" language. BCBS AB 18 ("The District Court correctly concluded that the Medical Providers' tort claims and promissory estoppel claim "relate to" an ERISA-based plan and are thus preempted."); LZB AB 21 ("No state law claims more closely 'relate to' an ERISA than those, like Plaintiffs' claims here, that effectively seek to recover plan benefits despite being styled as state law claims."). Appellees fail to explain how a state-law claim for negligent misrepresentation—based on a specific promise regarding a payment

rate (UCR) made to a non-ERISA entity—could possibly "mandate benefit structures" or regulate the plan itself. *See PONI,* 399 F.3d at 698; *Self-Insurance*, 761 F.3d at 635-36. Appellees lack of analysis/test implicitly concedes that Medical Providers' claims do not meet the Sixth Circuit's criteria for preemption.

### A. Appellees Rely On An "Uncritical Literalism" Explicitly Rejected By The Supreme Court And This Court

The central failure of Appellees' briefing is the assumption that the phrase "relate to" retains its literal, dictionary definition. Appellees' arguments proceed as if ERISA preemption is a binary switch: if a claim mentions the Plan or involves Plan entities, it "relates to" the Plan and is therefore preempted. LZB AB 11, 16, 17, 19, 23, 24, 25, 33, 34; BCBS AB 15, 20. Such an interpretation has been expressly rejected. As articulated by the Supreme Court, if "relate to" were taken "to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." *Travelers*, 514 U.S. at 655.

To prevent ERISA from becoming a black hole that swallows generally applicable state laws, the Supreme Court moved away from a literal reading and toward a functional one. Appellees completely ignore

this shift, choosing instead to rely on the "expansive" rhetoric of the 1991 *Cromwell* era as if Supreme Court law (including *Travelers*) and post-*Travelers* Sixth Circuit law does not exist.

***This*** Court has made clear that the test for preemption is not whether a claim broadly "relates to" ERISA:

> [Rather] [i]n determining whether a state law has an impermissible connection with ERISA plans, **we start with the presumption that Congress did not intend to preempt state laws**, particularly in areas of traditional state concern…**ERISA does not create a state-law-free zone around everything that affects an ERISA plan**. Therefore, [the party claiming preemption] must show that the [relevant law or claim] (1) **mandates an aspect of law with which ERISA is concerned**, such as the administration of the plan itself, or (2) interferes with the **relationship between ERISA-covered entities**.

*Self-Insurance*, 761 F.3d at 635-36.

### B. Appellees Have Failed To Demonstrate ERISA Preemption Under *Self-Insurance*, *PONI* Or Any Post-*Travelers* Sixth Circuit Decision

Appellees have failed to satisfy their burden under the framework established by this Court. They offer no explanation—much less legal authority—as to how holding an insurer liable for its independent misrepresentations regarding a UCR payment rate "mandates an

aspect of plan administration." Nor do they explain how these claims "interfere" with the relationship between traditional ERISA entities.

Instead, Appellees assume that because a Plan exists in the background of the dispute, a state-law-free zone automatically arises. As *Self-Insurance* and *PONI* make clear, that is not the law. *E.g.*, *Self-Insurance*, 761 F.3d at 635-36.

As discussed at length in the Opening Brief—and conspicuously ignored by Appellees—when the Sixth Circuit's test is applied to the facts of this case, it is clear that ERISA preemption does not apply. OB 35-39.

## II. Appellees Ignore Or Misunderstand Medical Providers' Arguments Relating To *Cromwell*

The Opening Brief sets forth three critical points regarding *Cromwell*, which Appellees fail to address or seemingly-intentionally misconstrue. First, the broad "relate to" principle referenced in *Cromwell* has been significantly narrowed by *Travelers* and subsequent Supreme Court authority. OB 29-33. As a result, *Cromwell* does not serve as the standard for the detailed, functional preemption analysis required by this Court. *See, e.g.*, *PONI,* 399 F.3d at 698; OB 29-33, 35-39. This is not a question of just the law of this Circuit, but the law of

the land. Second, *Cromwell* rests on a precarious foundation—decided by a divided court, and authored by a district court judge sitting by designation who himself later rejected and abandoned *Cromwell*'s logic. OB 14-16, 33-34, 35-39. Third, and most importantly, *Cromwell* is factually inapposite, having based its preemption finding on the plaintiff's failure to assert an independent legal duty between it and the insurer. 944 F.2d at 1276 n.3; *see also* OB 35-39, 47-50.

Appellees response to these arguments is to cite a string of cases that have cited *Cromwell* over the last thirty years, none of which support an application of the broad preemption Appellees' demand. BCBS AB 18-19; LZB AB 21-22, 27. Appellees ignore the holding in *Cromwell* footnote 3 entirely, which demonstrates that the *Cromwell* Court's necessary predicate for preemption (the "absence of any legal duty" between the parties, *Cromwell*, 944 F.2d at 1276 n.3) is inapplicable. *See* PSAC, RE 30-1, Page ID # 182 ¶45 (anti-assignment provision); *id*. Page ID # 179-182 ¶¶26-48 (claims based on independent duties). Finally, as set forth below, Appellees ignore *Cromwell*'s actual holding and fail to provide any analysis for why Medical Providers'

presentation of Sixth Circuit law (including as applying binding Supreme Court law) is incorrect.

### A. Appellees' Cited Authority Does Not Support The Broad "Relate To" ERISA Standard From *Cromwell*

To bolster their reliance on an outdated reading of *Cromwell*, Appellees provide a string of citations intended to suggest that *Cromwell* is the gold standard for the ERISA preemption analysis within the Sixth Circuit. BCBS AB 18-19; LZB AB 21-22, 27. Not so. The cases only cite *Cromwell* for a generic proposition—ERISA preemption can in some cases be broad—while applying entirely different, modern frameworks in their actual legal analyses. Moreover, none of these cases involve a third-party medical provider asserting an independent legal duty against an insurer:

***Merritt v. Flextronics Int'l USA, Inc.*, 2024 U.S. App. LEXIS 16380 (6th Cir. July 3, 2024); *Mazur v. Unum Ins. Co.*, 590 F. App'x 518 (6th Cir. 2014), *Smith v. Commonwealth Gen. Corp.*, 589 F. App'x 738 (6th Cir. 2014) *Peach v. Ultramar Diamond Shamrock*, 229 F. Supp. 2d 759 (E.D. Mich. 2002)**: Each cites *Cromwell* to introduce the general concept that ERISA preemption can be broad. The actual preemption finding in each of these cases is based

on the undisputed fact, found in the first line of each opinion, that the plaintiffs were traditional ERISA beneficiaries seeking traditional plan benefits. *See Merritt,* 2024 U.S. App. LEXIS 16380, at *1 ("Merritt alleged that he is a Flextronics employee"); *Mazur,* 590 F. App'x at 519 ("UNUM [] breached its contract with Mazur and ... he was entitled as the beneficiary of his ex-wife's life insurance policy"); *Smith*, 589 F. App'x at 739 ("Smith was an employee of Defendant Commonwealth"); *Peach,* 229 F. Supp. 2d at 761 ("Peach[] was employed by Total Petroleum, Incorporated (TPI) when the company was acquired by defendant Ultramar Diamond Shamrock."). These cases do not rely on *Cromwell*'s specific "absence of duty" analysis because no duty beyond the Plan was ever asserted.

***McLemore v. Regions Bank*, 682 F.3d 414 (6th Cir. 2012)**: Like the first group, *McLemore* cites *Cromwell* for the general proposition that ERISA preemption may be broad. *See id*. at 425. However, in utilizing *PONI's* test, *McLemore* acknowledged that plaintiff's negligence claim would not have been preempted by ERISA. *Id.* at 426 ("In the absence of the UFA, we may have reached a different

conclusion. ERISA does not preempt garden-variety claims against nonfiduciaries providing professional services to an ERISA plan").

***Local No. 1654, IBEW v. L.G. Philips Display Components Co.*, 137 F. App'x 776, 777 (6th Cir. 2005)**: *Local* cites *Cromwell* to generally reference ERISA preemption. *Local* strictly involved the ERISA structure (union/employer). It provides no roadmap for a dispute where an outside provider sues for misrepresentations made outside the plan's four corners.

***Langley v. DaimlerChrysler Corp.*, 502 F.3d 475 (6th Cir. 2007)**: *Langley* involved no ERISA preemption analysis at all. *Id.* at 483. Rather it cites *Cromwell* relating only to complete/jurisdictional preemption. *Id.*[5]

***Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002)**: *Peters* involved a former employee's claim against the plan. The Court cited *Cromwell* for the general proposition that claims seeking ERISA

---

[5] LZB took issue with Medical Providers' citations to complete preemption cases in *Ward v. Alt. Health Delivery Sys.*, 261 F.3d 624, 627 (6th Cir. 2001) and *Mich. Affiliated Healthcare Sys. v. CC Sys. Corp.*, 139 F.3d 546, 550 (6th Cir. 1998). LZB AB 32-33.

benefits may be preempted, while others that only "peripherally 'relate to' ERISA" are not. *Id*. at 468. In finding preemption in the particular circumstances of that case, the Court expressly noted that where a claim requires only a "simple mathematical calculation of benefits," the damages "relate only peripherally to the ERISA plan" and are not preempted. *Id.* at 469.

Rather than supporting preemption, *Peters* supports a finding of no preemption here, where Medical Providers' damages do not require any health plan at all.

***Lion's Volunteer Blind Indus. v. Automated Grp. Admin., Inc.*, 195 F.3d 803 (6th Cir. 1999)**: *Lion's* explicitly cautioned that the "description of *Cromwell* as holding that all misrepresentation claims are preempted by ERISA is also inaccurate." *Id.* at 808. The Court clarified that preemption only occurs when a claim necessarily relies on the "existence and interpretation" of the plan. *Id.* at 809.

*Lion's* support no preemption here where the existence of the plan and its terms are irrelevant; Appellees' representations provide the basis for the claims.

***Zuniga v. Blue Cross & Blue Shield*, 52 F.3d 1395 (6th Cir. 1995)**: *Zuniga* involved a doctor seeking reinstatement into a plan—i.e. a process that "necessarily relies on the existence and interpretation" of the plan's selection criteria—not payment for agreements to pay separate from the plan, and cites *Cromwell* for this general proposition. *Id.* at 1402.

Medical Providers do not challenge their status under the Plan; they seek enforcement of a specific, extra-plan representation regarding payment rate. Whether the Plan is found to ultimately exist or provide coverage is irrelevant.

* * *

Appellees' cited cases do not evidence a ***following*** of *Cromwell*'s logic, let alone suggest a preemption application broader than *Cromwell*'s footnote 3. No case involves a claim by a non-ERISA entity based on a direct, independent legal duty. Appellees failed to identify a single case since *Travelers* that uses *Cromwell's* **<u>analysis</u>** to determine preemption.

### B. Appellees Never Apply *Cromwell's* Preemption Analysis As Articulated In Footnote 3

Appellees' reliance on *Cromwell* is fundamentally flawed because they mistake the Court's *conclusions* for its *analysis*. In the body of the *Cromwell* opinion, the *Cromwell* Court offers little more than a perfunctory list of state-law claims, followed by the circular reasoning that because these claims seek "recovery of benefits," they are "at the very heart" of ERISA and thus preempted. *Cromwell*, 944 F.2d at 1276. This is the exact "uncritical literalism" that the Supreme Court rejected in *Travelers*, which is binding on ***all*** courts in ***all*** circuits.

However, as Medical Providers pointed out in their Opening Brief—and as Appellees have failed to address—the only substantive factual application of preemption in *Cromwell* is found in footnote 3.

In that footnote, the *Cromwell* Court set forth the basis for its decision: the providers had failed to perform even basic due diligence. They provided services without requiring proof of insurance, never asked to be notified if coverage lapsed, and took an assignment of benefits without checking if it conveyed any actual rights. *Id.* at 1276 n.3. It was only against this backdrop of total provider inaction that the Court concluded:

> **In the absence of any legal duty** between appellee, the Beckman plan and appellants, ERISA negates appellants' attempt to make appellee and the plan an after-the-fact insurer of the Reinke's private debt.

*Id.*

BCBS chose to completely ignore footnote 3 in its Brief, never acknowledging its existence. LZB, on the other hand, acknowledges footnote 3 in passing, while ignoring its content:

> Indeed, Plaintiffs' characterization of *Cromwell* is based entirely on footnote 3 of the opinion, and footnote 3 says nothing of the sort. *See* 944 F.2d at 1276 n.3.

LZB AB 30. LZB never explains what footnote 3 says that is in any way contradictory to Medical Providers' analysis or why footnote 3 "says nothing of the sort." As discussed at length in the Opening Brief, unlike the providers in *Cromwell*, Medical Providers' claims do not seek to establish coverage where there is none. OB 33-39, 47-49. Crucially, Medical Providers called and obtained specific representations and promises from which their claims arise, and which exist independently of any Plan terms or coverage provisions. *See id.*

Appellees attempt to strip *Cromwell* of its factual context. They seek its "broad preemption" conclusion, while ignoring *Cromwell*'s

"absence of duty" finding that made that conclusion possible. Because Medical Providers' claims are rooted in the existence of an independent legal duty—a duty created by Appellees' own affirmative misrepresentations, which stand on their own irrespective of an ERISA plan—the factual gate through which *Cromwell* passed simply does not exist here.

Further, *Cromwell* at minimum hinted that its entire analysis hinged on the plaintiff's attempt to circumvent the failed assignment both through footnote 3 and through its reference to the attempt to "affect *the relationship* between plan principals by extending coverage beyond the terms of the plan." 944 F.2d at 1276. The only way for a third-party provider to affect the relationship between plan principals is through an assignment. When considering a case in which there is no possible assignment, like the present one, Appellees provide no explanation as to how *Cromwell* would support preemption.

### C. Appellees Fail To Explain How Medical Providers' Application Of Sixth Circuit Caselaw, Including *Cromwell*, Is Incorrect

In their Briefs, Appellees skip the legal heavy lifting. When faced with Medical Providers' detailed analysis of *Cromwell*'s footnote 3 and

the importance of considering the parties' relationships adopted by this Circuit and nearly every other Circuit, BCBS does not engage at all, and LZB misrepresents or cursorily skirts the issue.

In an attempt to neutralize Medical Providers' reliance on *PONI*—a binding decision in ***this*** Circuit—LZB ignores the law and misrepresents the case:

> For example, in *PONI*, on which Plaintiffs rely (*see* Appellants' Brief at 37), this Court expressly noted that "[a] suit against a non-fiduciary"—*i.e.*, a party outside of the ERISA relationship—"to recover plan benefits seeks to create an alternative to ERISA's enforcement mechanism, and accordingly is preempted." *PONI*, 399 F.3d 392 (6th Cir. 2005).

LZB AB 31-32. But LZB's citation to "399 F.3d 392" is not in *PONI*. And *PONI* says the exact opposite of what LZB claims. In *PONI*, the Sixth Circuit expressly found that the non-fiduciary related claims—specifically for breach of contract and negligent misrepresentation (i.e. like those here)—were ***not*** preempted precisely because ERISA does not govern the relationship between a plan and a third-party service provider:

> [A] negligent-misrepresentation claim against MVP does not implicate the same concerns because **ERISA does not govern the relationship between a plan and its non-**

> **fiduciary service provider**. PONI's claim against MVP arises solely out the oral agreement for MVP to provide record-keeping services. A reviewing court would not have to determine if an ERISA-qualified plan had been violated, but rather simply if MVP failed to perform as it had represented. Moreover, the negligent-misrepresentation claim against MVP does not undermine any of ERISA's objectives or threaten the relations among traditional ERISA plan entities. Therefore, we conclude that the negligent-misrepresentation claim against MVP is not preempted.

*Id.* at 703-04.[6] *PONI* supports a finding of no preemption here.

Next, Medical Providers established that the factual application in *Cromwell*—found in footnote 3—takes into account the existence of an independent duty and the relationship created (or not created) through an assignment—i.e. whether the ERISA relationship is implicated through an assignment, rather than ***not*** implicated by virtue of an independent legal duty. *Cromwell*, 944 F.2d at 1276 n.3. LZB's response

[6] LZB also incorrectly claims that *Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir. 1999) supports preemption of a claim brought by a non-ERISA entity. LZB AB 32. LZB's citation to *Smith* merely shows that where an employee sues an entity that is acting like an ERISA fiduciary, the employee's claim against the entity is a breach of fiduciary duty under ERISA. *See Smith*, 170 F.3d at 615-16. There is no factual comparison relevant to our case in *Smith,* but the analysis that applies is where a claim cannot colorably be described in any manner as a fiduciary relationship there is no preemption. *Id.* at 617; OB35-36.

is just that "footnote 3 says nothing of the sort," without any analysis. LZB AB 30. "Nuh-uh" is not a legal argument.

*Cromwell*'s focus on the "absence of any legal duty" is paramount to the factual analysis of ERISA preemption of the state law claims in the case. Judge Feikens, the author of *Cromwell* wrote:

> **I believe that the dissent is correct** in its determination that Supreme Court and Sixth Circuit precedent clearly require that a district court make an independent inquiry at the outset to determine whether the plaintiff is a "participant" or "beneficiary" within the meaning of ERISA, before it turns to the issue of preemption.

*Lifeline, Ltd. No. II v. Connecticut General Life Insurance Co.* 821 F. Supp. 1201, 1211 (E.D. Mich. 1993). *Cromwell* cannot support preemption where the provider-plaintiff is not an ERISA entity and an independent legal duty exists between the provider and insurer.

Finally and relatedly, Medical Providers specifically raised the need to consider the parties' relationships through Medical Providers' citation to *Self-Insurance*. OB 35. LZB's only response is that *Self-Insurance* is factually different because it involved a state tax law. LZB AB 28 ("*Self-Insurance* does not address preemption of state law claims; rather it deals with the potential preemption of a state tax law…").

LZB's argument misses the point. Medical Providers were not citing to *Self-Insurance* to claim that *Self-Insurance* was factually analogous to the present case. Medical Providers pointed to *Self-Insurance* to support that the Sixth Circuit looks to the relationship between the parties in conducting ERISA preemption analyses. OB 35-37. That relationship does not exist here, which supports a finding of no preemption.

* * *

Medical Providers presented Sixth Circuit authority and consistent out-of-circuit authority supporting that the relationship of the parties is of paramount importance in conducting an ERISA preemption analysis. OB 35-39; *see also* Section III below. Appellees' failure to engage with this essential argument—other than through LZB's demonstrably false characterization of *PONI*—confirms that Appellees' position is tied to a cursory reading of *Cromwell* that does not reflect the law of this Circuit, nor can it, as this Circuit has and must follow Supreme Court jurisprudence with which Appellees' interpretation of *Cromwell* is irreconcilable.

## III. Sister Circuit Authority Clearly Supports Reversal

The overwhelming consensus of Sister Circuit authority, applying Supreme Court precedent, also aligns with Medical Providers' position that state-law claims based on independent, extra-plan representations are not preempted. OB 42-47; *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 236-237 (3d Cir. 2020); *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011); *Home Health v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 605 (8th Cir. 1996); *Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1533-34 (11th Cir. 1994); Section III.B below. Appellees attempt to avoid this weight of authority by relying on cases that are factually and legally inapposite (LZB AB 28-29), while manufacturing distinctions (BCBS AB 13-14, 24) about Medical Providers' cited cases and the facts of this case that are plainly wrong. And while the Sister Circuit cases are not binding on this Court, their consistent interpretation and application of Supreme Court jurisprudence since *Travelers* are highly relevant in understanding the Supreme Court mandate binding on ***all*** courts.

### A. LZB's Cited Cases Are Factually Inapposite And Do Not Support Preemption Here

LZB cites to two Circuit cases—*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.,* 103 F.4th 597 (9th Cir. 2024) ("*Bristol*"), and *Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, 2024 U.S. App. LEXIS 13227 (2d Cir. June 3, 2024)—and two district court cases—*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc.*, 532 F. Supp. 3d 956, 967 (S.D. Cal. 2021) and *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011 (N.D. Cal. 2020)—to claim that Sister Circuit authority supports preemption here. LZB is incorrect.

One, in *Bristol*, the Ninth Circuit distinguished itself from the cases cited by Medical Providers precisely on this point of misrepresentations:

> Some circuits have permitted providers' state law claims for misrepresentation of health coverage to proceed when the patients were covered by an ERISA plan, but—contrary to the insurer's representations—lacked coverage for the specific treatment rendered. *See, e.g., Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 224 (3d Cir. 2020); *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383-84 (5th Cir. 2011); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533-34 (11th Cir. 1994). This

> line of authority is likewise distinguishable from this case. Here, there is no evidence that the 106 patients in question were ineligible for coverage at the time of the verification and authorization calls, **or that Cigna misrepresented patient coverage, or the extent of coverage, during the calls.**

*Bristol*, 103 F.4th at 607. In *Bristol*, rather than claiming an independent legal right, the plaintiff asserted an *assignment from the patients*. *Id.* at 603 ("Bristol has brought a parallel claim for the denial of ERISA benefits as the plan participants' assignee."). Further, the plaintiff "specifically invoke[d] Cigna's plan terms to supersede any representations that Cigna made on the calls, arguing … **the plan payment rate may potentially apply** …'" *Id.* at 603. As such, *Bristol* involved a claim based on the plan. *Bristol* represents a singular, very fact-specific application of Ninth Circuit ERISA preemption jurisprudence.

In contrast to the factual scenario in *Bristol*, the Ninth Circuit has addressed the factual scenario at issue in ***this*** action at least four times, each time finding no preemption. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 980 (9th Cir. 2007) ("plaintiff hospital was a third-party with nonderivative claims" which

"did not 'relate to' the ERISA plan"); *Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052-54 (9th Cir. 1999) (relying on *Travelers* to find medical provider's claims against health plan not preempted); *City of Hope Nat'l Med. Ctr. v. AFL Hotel & Rest. Workers' Health & Welfare Plan*, 446 F. App'x 53, 54 (9th Cir. 2011) (rejecting claim of preemption where "City of Hope alleges the existence of its own contract with and representations from AFL. … not as an assignee of benefits under an ERISA plan[.]"); *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) ("the Complaint asserts claims based on … misrepresentations made to St. Mary's by Seafarers. … the claims are based on independent state law, and the dispute involves a contract and representations made between a third party provider and a plan—a relationship that is not governed by ERISA.").

Another decision in the Ninth Circuit is forthcoming, which is expected to explicitly discuss *Bristol* as not altering Ninth Circuit ERISA-preemption jurisprudence as to claims (like the one here) for misrepresentation. *See Healthcare Ally Management of California, LLC*

*v. WSP USA, Inc.*, No. 24-3479, Oral Arg. (9th Cir. Aug. 22, 2025).[7]

Two, in *Park Ave.*, the Second Circuit, in an unpublished decision, discussed how the plaintiffs tied their requested payment—like in *Bristol*—to the plan. 2024 U.S. App. LEXIS 13227, at *4 ("In explaining its entitlement to reimbursement, PAPC relies on the plan[.]"). *Park Ave.* too, therefore, is inapposite. Medical Providers do not argue the plan terms are necessary; to the contrary, Medical Providers expressly seek payment based on Appellees' oral representations and irrespective of what the Plan does or does not say. *See* PSAC, RE 30-1, Page ID # 178-182 ¶¶18-48.

Three, in *Fast Access*, the plaintiff did not allege a separate claim; "Specialty also does not specify any promises or assurances that were allegedly made that could function independently of the preapprovals or Patient A's plan." 532 F. Supp. 3d at 970. Thus, *Fast Access* unsurprisingly supports no preemption here, where separate claims are alleged for Appellees' promises and assurances of payment at a particular rate.

[7] Viewable at https://www.youtube.com/watch?v=I3biYEu9z78 and ca9.uscourts.gov/media/video/?20250822/24-3479/.

Finally, in *Pac. Recovery*—like *Bristol*—the plaintiff tied recovery to the health plan and that a review of the plan would be needed to determine the payment rate. *Pac. Recovery*, 481 F. Supp. 3d at 1030 ("plaintiffs appear to be seeking additional reimbursements under their patients' ERISA plans, as they request that the Court order United to 'reprocess' the claims for reimbursement 'using an appropriate methodology.'"). That is not the case here. *See* Section IV below; PSAC, RE 30-1, Page ID # 178-182 ¶¶18-48.

**B. BCBS' Attempts to Distinguish Medical Providers' Authority Are Incorrect**

BCBS attempts to distinguish Medical Providers' Sister Circuit authority by saying:

> This matter does *not* involve: (1) a standalone agreement with claims unrelated to a benefits plan (*Plastic Surgery*, 967 F.3d at 229-231); (2) a dispute about an assignment of benefits (*McCulloch*, 857 F.3d at 144); (3) claims of misrepresentation regarding coverage (*Access Mediquip*, 662 F.3d at 385; *In Home Health*, 101 F.3d at 605; *Lordmann*, 32 F.3d at 1533)…

BCBS AB 24. However, BCBS' attempted (and glossed over) distinctions are incorrect.

First, and as will be discussed below in Section IV, Medical Providers ***are*** alleging a standalone agreement and claims based on BCBS' standalone representations and promises. Medical Providers' claims do not depend on the Plan and can be adjudicated without ever looking at or considering the Plan. This case is no different from *Plastic Surgery*. *See* PSAC, RE 30-1, Page ID # 178-182 ¶1.

Second, an assignment or lack thereof is at issue, as Medical Providers plead an anti-assignment in the Plan. PSAC, RE 30-1, Page ID # 182 ¶45.

Third, *Access*, *Lordmann* and *In Home Health*—contrary to BCBS' contention—are not limited to disputes "regarding coverage."

In *Access*, not only was the case not simply a coverage dispute, the Fifth Circuit rejected the very argument and distinction BCBS advances here:

> United asserts that we have "consistently used" the "'existence' of patient coverage versus 'extent' of patient coverage analysis" under which claims based on "extent" misrepresentations are preempted. But neither United nor the district court cite, and we are not aware of, any case in which we held that ERISA preempts a third-party provider's state law misrepresentation claims premised on allegations that it was **misled by an ERISA plan's statements regarding the**

> **extent of coverage** for the provider's services. On the contrary, the claim we held was not preempted in *Transitional* was premised on an alleged misrepresentation regarding the extent of Davis's coverage, and our opinion made plain that **our case law requires that result when there is some coverage**.

*Access*, 662 F.3d at 383.[8]

Similarly, in *Lordmann*, the plan paid for the ***partial***, but not full, duration of provided services for which payment was promised:

> Castagno again said no, assuring Marot that between Blue Cross/Blue Shield and Equicor, Lordmann's bill would be paid in full. (*Id.*) During this entire period Equicor monitored Lordmann's care for Victoria. (*Id.* P 11.) Equicor never informed Lordmann that the Hi-Fi plan **covered only** thirty days of home nursing care.

---

[8] *Cromwell* relied on the Fifth Circuit case, *Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), which determined based on an assignment that there was preemption. *See Cromwell*, 944 F.2d at 1276 ("*Hermann Hosp.* …"). *Hermann* is no longer good law to the extent it disagrees with *Access* and the line of cases cited by Medical Providers. *See Access*, 698 F.3d at 230 ("reinstate the panel opinion and overrule, to the extent inconsistent with its reasoning, the court's opinions in *Cypress Fairbanks, Hermann I* and *Hermann II*"). However, even under the more restrictive *Hermann* analysis—rather than that of *Access*—Medical Providers' claims are still not preempted because of the absence of an assignment and prohibition of an assignment alleged in this case. PSAC, RE 30-1, Page ID # 182 ¶45.

*Lordmann*, 32 F.3d at 1531. Contrary to BCBS' offhand dismissal, *Lordmann* too was not a case relating to lack of coverage.

Finally, *Home Health*'s decision too was not based on coverage. Rather, *Home Health* supports the precise distinction that Medical Providers advance with respect to *Cromwell*: "*Cromwell* is distinguishable from the present case because Home Health is not seeking benefits as the assignee of an ERISA beneficiary." *Home Health*, 101 F.3d at 605. Medical Providers, like the providers in *Home Health*, assert claims based on independent duties.

* * *

Appellees are wrong in suggesting that there is a meaningful factual distinction between the facts here and those in the Third, Fifth, Eighth, Tenth, and Eleventh Circuits. Appellees are equally wrong in suggesting that *Bristol* and *Park Ave.*—involving plaintiffs who either sued as assignees or admitted their claims were tethered to plan terms—are factually similar. Because Medical Providers sue as non-ERISA entities on standalone promises and representations, the district court's preemption analysis was erroneous and must be reversed.

## IV. Appellees Wrongfully Argue Medical Providers' Claims Arise "Under The Plan"; The Calculation Of Damages And All Other Factual Questions Are Independent From The Plan

Appellees' contention—that Medical Providers' claims fall "under La-Z-Boy's Plan" is factually and legally incorrect. LZB AB 11, 16, 17, 19, 23, 24, 25, 33, 34; BCBS AB 15, 20. As specifically alleged in the PSAC, the entire damages calculation is external to the Plan and rooted in the independent representations made during the verification calls. PSAC, RE 30-1, Page ID # 178-182 ¶¶18-48. Appellees owe Medical Providers payment based on the representations of what they represented on the phone as compared to what they actually paid. What the Plan says or does not say is irrelevant.

### A. The "UCR" Rate is an External Industry Benchmark, Not A Plan Term

During the verification calls, Appellees affirmatively represented that payment would be made at the "UCR rate." PSAC, RE 30-1, Page ID # 180 ¶¶29-30. UCR is widely understood across the insurance sector—as evidenced by the public websites of major insurers like Aetna and UnitedHealthcare—to refer to a specific percentile of Fair Health data (generally the 80th percentile). *Id.* at 178-79 ¶¶18-23. LZB

suggests that the reference to UCR as a payment term routinely ***used*** by plans as their payment amount, (LZB AB 12), means that a request for UCR payment implicates the Plan. Not so. Rather, it shows that UCR is a commonly understood industry term often adopted by insurers in plans or otherwise to express a payment rate. A court may simply look at this external industry benchmark to determine the payment rate. *See id.* There is no need to ever look at the Plan.

### B. Damages are Calculated Solely from the Verification Call Data

Medical Providers' damages can be calculated without any reference to the Plan:

1. Identify the UCR rate (based on industry Fair Health data); and
2. Subtract the "Max Out of Pocket" figure represented to Medical Providers by Appellees during the call as the amount (within the Fair Health number) that would not be paid.

The resulting amount (UCR minus the "Max Out of Pocket) is the amount Appellees owe. Whether either representation accurately reflects Plan benefits is irrelevant.

This process is a straightforward mathematical calculation based on the specific figures provided during the commercial interaction

between the parties. It does not require the Court to interpret, or even reference, the Plan's internal benefits schedule.

This is precisely the type of calculation found to fall ***outside*** of ERISA preemption by this Court. *See Peters*, 285 F.3d at 469; *see* BCBS AB 19 (citing *Peters*). Where a claim requires only a "simple mathematical calculation" to determine damages, the claim relates only "peripherally" to the ERISA plan and is not preempted. *Peters*, 285 F.3d at 469.

## V. The District Court Abused Its Discretion By Dismissing The Action With Prejudice Without Granting Medical Providers A Single Opportunity To Amend

The district court's error was not merely in its interpretation of *Cromwell*, but also in its procedural finality. Medical Providers sought leave to amend in their opposition to Appellees' Motion. OB24. The district court, in dismissing the case with prejudice, *de facto* held that no set of facts—no matter how specifically pleaded—could ever state a non-preempted claim. As shown by Supreme Court precedent, Sixth Circuit jurisprudence, and Sister Circuit and state court caselaw, such a finding is in error.

Should this Court credit any of the district court's or Appellees' arguments regarding the pleadings falling "under La-Z-Boy's Plan," (LZB AB 11, 16, 17, 19, 23, 24, 25, 33, 34; BCBS AB 15, 20), Medical Providers have provided the PSAC which specifically resolves those points, and which would have been filed had leave been granted.

**CONCLUSION**

Medical Providers respectfully request that the Court reverse the judgment of the district court and remand with directions to proceed with the case.

Dated: April 1, 2026

Respectfully submitted,

Law Office of Jonathan A. Stieglitz

By: /s/ Jonathan A. Stieglitz

Jonathan A. Stieglitz
Attorneys for Plaintiffs-Appellants Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; And Advanced Weight Loss Surgical Associates

## CERTIFICATION OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), the attached Reply Brief is proportionally spaced, has a typeface of 14 points or more, and contains 6,471 words.

Dated: April 1, 2026

Respectfully submitted,

Law Office of Jonathan A. Stieglitz

By: /s/ Jonathan A. Stieglitz

Jonathan A. Stieglitz
Attorneys for Plaintiffs-Appellants Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; And Advanced Weight Loss Surgical Associates

## CERTIFICATION OF SERVICE

I hereby certify that on April 1, 2026, I electronically filed the foregoing Appellants' Reply Brief of Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; and Advanced Weight Loss Surgical Associates with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 1, 2026

Respectfully submitted,

Law Office of Jonathan A. Stieglitz

By: /s/ Jonathan A. Stieglitz

Jonathan A. Stieglitz
Attorneys for Plaintiffs-Appellants Laurel Hill Management Services, Inc.; Minimally Invasive Surgical Associates; And Advanced Weight Loss Surgical Associates